MATTER OF DE LUCIA*

In Deportation Proceedings

A-11129289

*Decided by Board April 21, 1966*

(1) Claim of prejudgment is rejected absent evidence the outstanding order of the Attorney General has not been followed which directs all Service and Board officers exercising hearing powers to use their "independent judgment" and "give each alien a fair and impartial trial without prejudgment."

(2) Alleged undue publicity in the press does not preclude a fair deportation hearing; neither does Government refusal to permit counsel for respondent to review a character investigation report, not introduced into evidence; nor does denial of respondent's request to subpoena certain Government officials where it is clear from the record their testimony would not have been relevant to the issues of relief under sections 249, 212(h) and 243(h).

(3) In finding a lack of good moral character for the purposes of section 249 of the Act, the special inquiry officer did not err in considering respondent's illegal gambling activities in 1962, his imprisonment from July 1959 to October 1961, and his failure to testify truthfully during the reopened hearing.

(4) Notwithstanding respondent's long residence and close family ties in the United States, since the creation of a record of admission for permanent residence pursuant to section 249 of the Act, as amended, is a matter of administrative grace, his application therefor is denied where he has submitted no affirmative evidence of his genuine reformation or rehabilitation and by his equivocal answers and his refusal to answer relevant questions during the hearing he has failed to come forward with full information within his knowledge regarding his activities which has a direct bearing on his application.

(5) Reopening of proceedings for the introduction of additional evidence on the issue of political persecution is denied as no purpose would be served thereby since ample evidence of record affirmatively establishes that respondent, if deported to Italy, would not be subject to persecution within the meaning of section 243(h) of the Act, as amended by Public Law 89-236, because of his criminal record in the United States.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable by the law existing at the time of entry, to wit: a

_____

*Affirmed, *De Lucia* v. *Immigration and Naturalization Service*, 370 F.2d 305 (C.A. 7, 1966).

person who has not presented an unexpired passport or official document in the nature of a passport issued by the government to which he owes allegiance, or other travel document showing his origin and identity, as required by the Passport Act of May 22, 1918, and the Executive Order in effect at the time of entry.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable by the law existing at the time of such entry, to wit: a person who has been convicted of a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, under section 3 of the Act of February 5, 1917, to wit: voluntary homicide.

The respondent is a native of Italy. He has been found deportable under the provisions of section 241(a)(1) of the Immigration and Nationality Act as an alien who was excludable at the time of entry, in that, he did not present the required immigration documents and had been convicted of a crime involving moral turpitude prior to entry, to wit, voluntary homicide (8 U.S.C. 1251(a)(1)).

The case was last before us in September of 1961. An order entered on that occasion granted the respondent's motion to reopen the proceedings for the "limited purposes"[1] mentioned in a stipulation between opposing counsel which was approved by the Court of Appeals for the Seventh Circuit on August 27, 1964. Pursuant to the Board's order, reopened hearings were accorded the respondent in November 1964, February, March and June 1965.

The respondent has applied for the creation of a record of his lawful entry pursuant to section 249 of the Immigration and Nationality Act (8 U.S.C. 1259); a waiver of the criminal ground of inadmissibility under section 212(h) of the Immigration and Nationality Act, as amended (8 U.S.C. 1182(h)) which if granted would remove an existing bar to relief under section 249 (supra) and the withholding of his deportation to Italy under the provisions of section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)). The special inquiry officer in an order entered on October 25, 1965 denied the respondent's applications for discretionary relief and ordered his deportation to England. An alternative order

---

[1] The "limited purposes" set forth in the stipulation provide in substance that the case be remanded to the Board of Immigration Appeals on motion to reopen "solely for the purpose of presenting to a special inquiry officer (the respondent's) application for relief under section 243(h) of the Immigration and Nationality Act and for any other discretionary relief to which he deems himself entitled and to have the special inquiry officer designate the country to which deportation shall be effected." There is also a provision in the stipulation which provides that the respondent will waive any discretionary relief now available to him for which he does not apply during the reopened hearing.

of deportation to Italy was also entered if England is unwilling to accept him. The respondent's appeal from this order is now before us.

The respondent is a male alien, 67 years of age. He last entered the United States through the port of New York on August 12, 1920. He was found deportable in 1959 as an alien who had entered the United States without proper documents and as an alien who had been convicted of voluntary homicide in 1917, a crime involving moral turpitude committed prior to entry. The order of deportation was affirmed by the Circuit Court of Appeals for the Seventh Circuit in 1961. *De Lucia v. Flagg*, 297 F.2d 58, cert. den. 369 U.S. 837. The respondent is married to a lawfully resident alien and is the father of two male American citizen children, veterans of World War II and a female American child, the mother of his five grandchildren.

The record created during the reopened hearings consists of some 370 pages of testimony and more than 130 exhibits. Extensive briefs and supplemental briefs submitted by counsel for the alien and the Deputy General Counsel of the Immigration Service are before us for consideration. The record, the briefs and oral argument have been thoroughly reviewed. Our decision, however, will be limited solely to a determination of whether the respondent has been accorded a fair hearing and to a determination of whether an exercise of the Attorney General's discretion is warranted with respect to relief under sections 249, 212(h) and 243(h) of the Immigration and Nationality Act (*supra*).

## THE ISSUE OF WHETHER THE RESPONDENT HAS BEEN ACCORDED A FAIR HEARING

Counsel for the respondent maintains that his client has not been accorded a fair hearing during the reopened proceeding. He alleges that the special inquiry officer prejudged the respondent's applications for discretionary relief; that respondent's case has been prejudiced by undue publicity in the press; that there was prejudicial error in that respondent was not permitted to examine a character investigation report and that favoritism was shown the Government in the issuance of subpoenas and during the cross-examination of the respondent whereas respondent's request to subpoena certain local and Government officials and to cross-examine Government witnesses was wholly denied or extremely limited.

We find no substance to counsel's claim that the respondent has been denied a fair hearing on his applications for discretionary relief.

The respondent supports his claim of prejudgment by a series of exhibits (A 106 through 124) which he alleges establish that all Attorneys General since May of 1952 and some of the Commissioners of Immigration and Naturalization have stressed the desirability of giving top priority to the deportation of aliens alleged to be in a class referred to as "racketeers." Counsel argues that published statements of the various Attorneys General including the incumbent Attorney General and certain Commissioners of Immigration and Naturalization have committed officers within the Immigration Service to an adverse course of action and bias against any alien purported to be within the so-called "racketeer" class.

Similar claims have been made in previous cases decided by this Board.[2] Such claims have been supported with some of the documentary evidence now before us. There was a claim of prejudgment in the *Accardi* and *Marcello* cases when they were before the Supreme Court of the United States. The claim of prejudgment was rejected in both instances.[3]

We reject the claim of prejudgment in the instant case for the reason that respondent has failed to introduce any substantial evidence that the incumbent Attorney General or the incumbent Commissioner of Immigration and Naturalization has issued an expressed or implied directive[4] to rule adversely on the respondent's applications for discretionary relief. In fact, there is an outstanding order of the Attorney General, issued April 23, 1954, which directs all officers exercising hearing powers in the Immigration Service and the Board of Immigration Appeals to exercise their power "fully and faithfully" and use their "independent judgment and . . . discretion as the regulations confer upon them . . . Those charged with the duty of hearing and deciding (cases) must give each alien a fair and impartial trial without prejudgment . . ."[5] We find no evidence that the order of the Attorney General has not been followed in this proceeding.

Counsel argues that the respondent is entitled to an evidentiary administrative hearing solely on the issue of prejudgment of his applications for discretionary relief. He relies on a decision by the

---

[2] *Matter of Marcello*, 5 I. & N. Dec. 261, B.I.A., June 1953.

[3] *Shaughnessy* v. *Accardi*, 349 U.S. 280 (1955) ; *Marcello* v. *Bonds*, 349 U.S. 302 (1955)

[4] At this stage of the proceeding counsel has made no claim that the Board of Immigration Appeals has prejudged the respondent's applications for discretionary relief. The Board is not bound by the special inquiry officer's order and has full power of decision on issues of fact, law or discretion. Cf. *Matter of B—*, 7 I. & N. Dec. 1 (A.G., 1956).

[5] See Order No. 45-54 of the Attorney General entered as Exhibit A 71.

Circuit Court of Appeals for the District of Columbia in the case of *Buffalino* v. *Kennedy*, 322 F.2d 1016 (June 1963) and a recent order of Judge Oliver Gasch of the United States District Court for the District of Columbia signed on February 23, 1966 (Civil Action No. 486-61).

We find counsel's plea for a separate evidentiary hearing on the issue of prejudgment without substance. Counsel has made no claim that this Board has prejudged the respondent's applications for discretionary relief. This Board has full power of decision with regard to the special inquiry officer's interpretation of the law, the facts and the exercise of the discretionary relief the respondent seeks.

Furthermore, the instant case is distinguishable from *Buffalino* (*supra*). Buffalino's applications for relief under sections 249 and 243(h) of the Immigration and Nationality Act were denied by the District Director at Philadelphia, Pennsylvania and his order was thereafter affirmed by the Regional Commissioner. Both of these officials are charged with enforcement duties. The action here under consideration has been taken and is being reviewed by officials of the Department of Justice who are concerned solely with adjudicative functions and the record contains a specific directive of the Attorney General which commands these officials to exercise their own independent judgment and give each alien a fair and impartial hearing without prejudgment (*supra* [5]). There has been no judicial finding in the case before us that a prima facie case of prejudgment has been presented by the present record. We find no substance to counsel's plea for a separate evidentiary hearing on the issue of prejudgment in light of our review of the record before us.

Counsel also maintains that the respondent's hearing has been rendered unfair and that his applications for relief have been prejudiced by the fact that the case has received undue publicity in the press. 8 CFR 242.16(a) provides in part that "Deportation hearings shall be open to the public, except that the special inquiry officer may, in his discretion and for the purpose of protecting witnesses, respondents, or the public interest, direct that the general public or particular individuals shall be excluded from the hearing in any specific case." We find nothing in the record which indicates that counsel for the respondent requested a closed hearing for the purpose of protecting the respondent or any of his witnesses from any undue publicity which a case such as this would normally produce.

Counsel alleges that the publicity in this case created such an atmosphere that the "fountain of justice was poisoned at its source ... before the hearing began" (record of oral argument, p. 3) and that under these circumstances it was impossible for the special in-

quiry officer to give the respondent a fair hearing. Again, counsel has submitted no substantial evidence to support his allegations. At page 220 of the transcript of the record, the special inquiry officer stated, "I intend to make my decision in this matter on the evidence in the record and not on the basis of any newspaper stories . . . this matter is not being tried before a jury, and I'm the person that (is) going to consider the evidence." At page 376 C of the record, the special inquiry officer made a similar statement when denying counsel's motion for a change of venue. At page 29 of his opinion the special inquiry officer stated he would disregard "press releases and newspaper reports relating to the respondent (and) submitted by respondent's counsel."

Counsel asserts that the respondent has been prejudiced and his hearing rendered unfair by reason of the fact that the Government refused to permit examination of a character investigation which the trial attorney concedes was intensive but which was not offered in evidence by the Government. Counsel maintains that an intensive examination of the respondent could not fail to develop some favorable factors in support of his (respondent's) application for discretionary relief. Counsel takes the position that "fair play" requires the Government to present all the evidence at its disposal and that the Government should not be a party to the suppression of evidence.

An alien who applies for discretionary relief has the burden of establishing his eligibility therefor. *Matter of T—S—Y—*, 7 I. & N. Dec. 582, B.I.A. (September 1957); *Matter of Y—*, 7 I. & N. Dec. 697, B.I.A. (March 1958). The trial attorney stated for the record that there was "no favorable evidence that I know of" (presumably in the character investigation report) and that counsel for the respondent was "at liberty to introduce any favorable evidence (that he felt would) help (his) case." (R–pp. 253–254) The respondent did not produce a single character witness to support his claim of good character. Since the Government did not introduce the character report in evidence, counsel for the respondent was not entitled to review it.

Respondent, through counsel, asserts that he was not accorded equal treatment with the Government in that his requests for the subpoenas of witnesses were wholly denied whereas the Government's written application for subpoenas submitted in advance of the hearing was granted. As we view the record there has been full compliance with 8 CFR 287.4, the regulation governing the issue of subpoenas. We note that the Government did not call any of the witnesses who had been subpoenaed prior to the start of the hearing. We find no error in the special inquiry officer's denial of respond-

ent's request to subpoena certain Government officials since it is clear from the record that their testimony would not have been relevant to the issues of relief under sections 249, 212(h) and 243(h) of the Immigration and Nationality Act and would have only cluttered the record with negative evidence.

Counsel asserts that the Government was permitted unlimited cross-examination of the respondent whereas had the respondent sought to recall an adverse witness he would have been severely limited (R-255, et seq.). He maintains that the respondent had been thoroughly cross-examined on three days by the original trial attorney and that the substitute trial attorney sought to reexamine him on matters already in the record. Section 242(b) of the Immigration and Nationality Act (8 U.S.C. 1252(b)) provides the special inquiry officer with ample authority to permit such cross-examination of an alien as he deems appropriate for a proper disposition of the case. Where the exercise of discretion is the issue before the special inquiry officer, he is permitted wide latitude in seeking the truth and exposing falsehood. We find no substance to counsel's allegations that the special inquiry officer's rulings in this area denied the respondent a fair hearing. Cf. *Matter of S—*, 5 I. & N. Dec. 60, B.I.A., January 1953; *Matter of T—*, 9 I. & N. Dec. 646, B.I.A., May 1962.

CREATION OF A RECORD OF LAWFUL ADMISSION UNDER SECTION 249 OF THE IMMIGRATION AND NATIONALITY ACT, AS AMENDED, AND WAIVER OF THE CRIMINAL GROUND OF EXCLUSION PURSUANT TO SECTION 212(h) OF THE SAME ACT (AS AMENDED) (8 U.S.C. 1259 AND 1182(h))

The respondent seeks to set aside the outstanding order of deportation by the exercise of the discretion granted the Attorney General pursuant to section 249 of the Immigration and Nationality Act, as amended (8 U.S.C. 1259). This provision of the statute authorizes the Attorney General, "in his discretion," to create a record of lawful admission in the case of any alien who has "no such record . . . otherwise available and who—

(a) entered the United States prior to June 30, 1948;
(b) has had his residence in the United States continuously since such entry;
(c) is a person of good moral character; and
(d) is not ineligible to citizenship; . . . provided the alien 'is not inadmissible under section 212(a) in so far as it relates to criminals, procurers and other immoral persons . . .'"[6]

---

[6] There are other classes of inadmissible aliens not pertinent here.

In conjunction with an application for the creation of a record of lawful admission an otherwise eligible alien who is inadmissible as a criminal under paragraph (9) of section 212(a) of the Act "may request a waiver of such ground of inadmissibility pursuant to the provisions of section 212(h) of the Act, as amended" (8 CFR 249.1).

The respondent meets the statutory requirements of section 249 of the Immigration and Nationality Act in so far as they relate to the nonexistence of a record of his lawful admission for permanent residence; his entry prior to June 30, 1948; his continuous residence in the United States subsequent to such entry and his eligibility for citizenship. The only issues before us in connection with the eligibility of the respondent is whether he is a person of good moral character and warrants an adjustment of his immigration status as a matter of discretion.

The respondent has the burden of establishing that he is eligible for the relief he seeks and that he should be granted such relief in the exercise of the Attorney General's discretion (8 CFR 242.17(d)). The special inquiry officer finds that the respondent has not met this burden.

When an alien seeks the favorable exercise of the Attorney General's discretion, it is incumbent upon him to supply such information that is within his knowledge and is relevant and material to a determination of whether he is a person of good moral character (cf. *Matter of Amando Mariani*, Int. Dec. No. 1478, B.I.A., June 8, 1965; *Kim* v. *Rosenberg*, 363 U.S. 405, 42 L.ed. 2d 1299 (1960); *United States* v. *Anastasio*, 120 F. Supp. 435 (D.C. N.Y., April 1954), reversed on other grounds 226 F.2d 912, cert. den. 351 U.S. 931).

The special inquiry officer concludes that the respondent has not established that he is a person of good moral character and accordingly is not statutorily eligible for relief under section 249 of the Immigration and Nationality Act, as amended. The evidence supporting this conclusion is fully set forth in the special inquiry officer's opinion of October 25, 1965. It is incorporated herein by reference and will not be repeated.

The special inquiry officer refers to three basic reasons for denying respondent's application for relief under section 249 (*supra*). He is convinced that the respondent did not testify truthfully during the reopened hearings. He gives considerable weight to the fact that the respondent was in prison for over 20 months during the five-year period immediately preceding the filing of his application under section 249 and he gives weight to the respondent's admitted large-scale, illegal gambling activity in 1962 (p. 40, special inquiry officer opinion).

During the course of the hearing, the respondent on numerous occasions, on advice of counsel, refused to comply with the special inquiry officer's directive that he respond to questions concerning his assets, income and activities (R-pp. 254-339). For example, the respondent refused to answer relevant questions concerning his criminal convictions in Italy (pp. 269-272); his entry into the United States under an assumed name (pp. 272-274); his fraudulent naturalization (pp. 276-282); his conviction in 1944 for conspiracy to commit extortion (pp. 282-284); his conviction for income tax evasion in 1957 (pp. 286-288); and the source and nature of his income over a period of 36 years (pp. 289-293-297-298).

Furthermore, the respondent gave equivocal answers to many questions which should have been within his knowledge and which we deem relevant to a determination of whether discretionary relief is warranted. He did not remember in whose names some $64,000 in Government bonds were held at the time he entered jail—"I think they were in my name or my wife . . . I don't remember." He did not remember financial transactions involving large sums of money which occured while he was in jail and which were reported on his 1961 tax returns (pp. 307-310).

When questioned as to "Where did the money come from to buy the bonds?" the respondent answered, "I don't remember buying any bonds." (pp. 311, 312) and he could not explain how he could make such large financial transactions while he was in jail (p. 316). He refused to explain where he obtained $104,000 in cash to pay his income taxes for 1948, 1949 and 1950 (p. 317). He refused to explain the nature of some $89,000 listed as miscellaneous income in his 1964 income tax returns (p. 318). He declined to furnish a break down of his race track winnings for 1964 (p. 320) and also refused to answer the question, "During 1964 did you receive payments of any kind from any person, group or organization other than the interest payments and the race track winnings listed as miscellaneous income on your 1964 income tax return?" (p. 324) He refused to bring in his personal records of the income he received during the past three years although he admitted keeping such record (p. 327). The respondent in answer to a question which referred to the fact that he won approximately $91,000 in a period of one and a half months preceding the time he went to jail testified, "I can't help it if I win in 30 or 60 days $91,000." (p. 334-335)

The respondent's refusal to furnish information which is peculiarly within his knowledge is a factor which may be considered by the special inquiry officer in exercising the Attorney General's discretion (Int. Dec. No. 1478, *supra*). An alien seeking a favorable

exercise of discretion cannot limit the inquiry to the favorable aspects of the case and reserve the right to be silent on the unfavorable aspects. *Matter of Y—*, 7 I. & N. Dec. 697, 700, B.I.A., March 26, 1958. We find on this record a sound basis for the special inquiry officer's conclusion that the respondent did not testify honestly and truthfully and was concealing facts within his knowledge.

Counsel urges that the respondent's illegal gambling activities in 1962 furnishes no basis for the special inquiry officer's conclusion that the respondent is not a person of good moral character. While it is true that section 249 of the Immigration and Nationality Act, as amended, does not require an applicant for relief to establish good moral character for any specified period of time, nevertheless, we believe that an illegal $10,000 bet on the World Series and an illegal $15,000 wager on a prize fight in 1962 are factors properly considered by the special inquiry officer in reaching a conclusion as to whether the respondent is a person of good moral character (R–pp. 130–131). The respondent, in fact, testified that for most of his life he has derived his income principally from betting on horse races (pp. 97 & 98). According to the record his last-profitable employment as the owner of a business was in 1922–1923 when he operated a restaurant (p. 165). We find no error on the part of the special inquiry officer in considering the respondent's illegal gambling activities as a factor in reaching a conclusion that relief is not warranted on this record.

Counsel maintains that the respondent's incarceration from July 1, 1959 until his release on parole in October of 1961 is not a factor which should be considered by the special inquiry officer in reaching a conclusion as to whether respondent is a person of good moral character because section 249 only requires a finding of present good moral character. We do not agree with counsel.[7] Section 101(f) of the Immigration and Nationality Act (8 U.S.C. 1101(f)) is the congressional expression of standards which must be adhered to in making a finding of good moral character "for the purpose of this Act," namely, the Immigration and Nationality Act. The statute

---

[7] Section 101(f) of the Immigration and Nationality Act reads in part as follows: *For the purposes of this Act—*No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he had been confined were committed within or without such period. (Emphasis supplied.)

provides the special inquiry officer with the alternative of making a finding of good moral character as well as an expression of whether he "regards" the person seeking discretionary relief to be a person of good moral character. It has been held that the standards set forth in section 101(f) (supra) should be taken into consideration, along with other factors, in determining whether the requirement of good moral character has been met. *Matter of P—*, 8 I. & N. Dec. 167, 169 (1958).

We realize that good moral character does not mean moral excellence. We are also aware of the fact that moral standards differ from time to time and from place to place. We do not believe that a person's good moral character is lost by a single lapse over an extended period of time. This respondent, however, has made no attempt to introduce evidence which would establish that he measures up to the standard of the average American citizen as it exists today. It cannot be said that on this record the respondent's reputation would pass muster with that of an average man or that he is regarded as a person of good moral character.

While there is substantial evidence which supports the special inquiry officer's finding that the respondent is not a person of good moral character and therefore statutorily ineligible for relief under section 249, we prefer to deny relief as a matter of administrative discretion for the reason that the respondent, as an applicant for administrative grace, has not come forward with full information that is within his knowledge. The information sought has a direct bearing on his application for relief under section 249 of the Immigration and Nationality Act, as amended (*supra*). An applicant for the creation of a record of his lawful admission for permanent residence has the burden of satisfying the Attorney General that an exercise of discretion is warranted. Under the circumstances, he must, upon the request of the Attorney General or some one acting for him, supply such information that is within his knowledge and has a direct bearing on his eligibility for relief under the statute. We will deny the respondent's application for relief under section 249 of the Immigration and Nationality Act, as amended, as a matter of administrative discretion.

The need for a waiver of the criminal grounds of inadmissibility under section 212(h) no longer exists because the record of the respondent's lawful admission for permanent residence will not be created. Under the circumstances, the respondent's application for relief under section 212(h) of the Immigration and Nationality Act becomes moot.

THE APPLICATION FOR A STAY OF DEPORTATION UNDER SECTION 243(h) OF THE IMMIGRATION AND NATIONALITY ACT (8 U.S.C. 1253(h))

Pursuant to section 243(a) of the Immigration and Nationality Act, the respondent designated England as the country to which he wished to be deported in the event an order of deportation was entered (p. 29). The order entered by the special inquiry officer on October 25, 1965 directs his deportation to England provided that country is willing to accept him, otherwise to Italy, the country of his birth and the country from which he last entered the United States.

The respondent applied for the withholding of his deportation to Italy pursuant to section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)) (Ex. A 61). The affidavit supporting respondent's application states in substance that his criminal record in the United States and the fact that he has been described by public officials as a "racketeer" and as one of the leaders of the Chicago "Cosa Nostra" would render him subject to severe limitations and punishment if returned to Italy. He also claims that his deportation to Italy would injure him physically and mentally because he would be separated from his family and is in constant need of medical care.

The evidence supporting the respondent's application for relief is fully discussed in the opinion of the special inquiry officer dated October 25, 1965, and will not be repeated. The discussion is incorporated herein by reference (pp. 47-52, special inquiry officer opinion).

The hearing on the issue of withholding deportation was conducted and the decision of the special inquiry officer was rendered prior to the effective date of the amendment of the Immigration and Nationality Act by Public Law 89-236 (December 1, 1965). Public Law 89-236 was enacted, however, on October 3, 1965. The special inquiry officer in his decision of October 25, 1965 fully considered the respondent's application for relief under section 243(h) in light of the amended version of the statute[3] which became effective on December 1, 1965.

Counsel urges that if the amended version of section 243(h) is to be applied in the instant case then respondent should be afforded an opportunity in a reopened hearing to prove that he would be persecuted for political reasons under the Italian law presently in force. Counsel proposes to show at a reopened hearing that political con-

---

[3] Section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)) was amended by striking the term "physical persecution" and inserting in lieu thereof "persecution on account of race, religion or political opinion."

siderations decide whether Italy would exile a deportee in the respondent's position of a stateless person without any rights of Italian citizenship.

The respondent has had ample opportunity to introduce evidence concerning his claim that he would be "persecuted for political reasons." The record contains an affidavit on Italian law prepared by Dr. A. Luini del Russo (Ex. A 62) and her testimony in another case involving an application for relief under section 243(h);[9] the deposition of Paola Alberto Rossi taken at the American Embassy in Rome, Italy on March 1, 1965 (Ex. A 102) and an official communication from the Italian Government entered as Exhibit A 134.

It is clear from the testimony of Dr. Russo and Paola Rossi that the restrictions imposed by the Italian Public Safety Act of 1956 (Ex. A 102) apply generally to all Italian citizens and are not directed solely against criminal deportees from the United States. The "Note Verbale" from the Italian Ministry of Foreign Affairs (Ex. A 134) states in part: "A person deported from the United States for criminal activities is free to select his place of residence in Italy . . . A deportee is not subject to police measures, unless he gives rise to suspicion that he is engaging in illicit activities . . . or associating with people of ill reputation . . . It may be useful to add in this connection that the party concerned (respondent) has the right to appeal to a court of appellate jurisdiction and eventually to the Supreme Court against the decision whereby restricted measures are assessed on him."

The Italian Foreign Ministry also stated that there were some 200 persons now in Italy who were deported from the United States of America for criminal activities. "Although many of these persons were deported for serious criminal violations committed in the United States of America, none of these 200 deportees is at present subject to any special restrictions under the Law of December 27, 1956. There is no provision of law now in force in Italy under which police restrictions can be imposed on persons who have committed crimes in other states in the past, whose conduct is now irreproachable and law abiding." (Ex. A 134)

We do not believe any purpose would be served in remanding the case to afford the respondent an opportunity to introduce additional evidence on the issue of "political persecution" in light of the official communication from the Italian Ministry of Foreign Affairs introduced in evidence as Exhibit A 134. Furthermore, the testimony of the respondent's witnesses, Dr. Russo and Paola Rossi, we believe supports the position taken by the Ministry of Foreign Affairs of

*Matter of Parisi*, A-8196763, B.I.A., December 7. 1960.

the Italian Government. There is ample evidence now of record which affirmatively establishes that the respondent cannot satisfy the statutory requirement that he would be subjected to persecution in Italy "on account of race, religion or political opinion" (section 243(h) as amended by Public Law 89–236).

Counsel argues that the statement of the Italian Foreign Ministry is not admissible as evidence unless an official of the Italian Government is produced for cross-examination. We note that it was respondent's counsel who originally requested that the statement be obtained from the Italian Government. Furthermore, relief under section 243(h) is a matter of discretion and as such the respondent does not have as a matter of right, the cross-examination of witnesses as provided in section 242(b)(3). Discretionary action by its very nature permits wide latitude to the authority charged with its exercise. The Attorney General may consider any evidence which would be of assistance in formulating "his opinion (that) the alien would be subject to persecution on account of race, religion or political opinion." *Dolenz* v. *Shaughnessy*, 206 F.2d 392 (C.A. 2, 1953) ; *Diminich* v. *Esperdy*, 299 F.2d 244 (C.A. 2, 1961), cert. den. 369 U.S. 844; *Cantisani* v. *Holton*, 248 F.2d 737 (C.A. 7, 1957).

Counsel maintains that under the savings clause of the 1952 Act (section 405(a); 8 U.S.C. 1101, footnote) the respondent's application for a stay of deportation under section 243(h) must be judged by the law existing prior to its amendment by Public Law 89–236. Counsel cites no authority to support this contention. It is well established that where a statutory provision as to administrative discretion is changed between the hearing before the special inquiry officer and final decision by this Board we must apply the amended version of the law. *Foti* v. *Immigration and Naturalization Service*, 332 F.2d 424 (C.A. 2, May 1964) ; *Patsis* v. *Immigration and Naturalization Service*, 337 F.2d 733, October 1964; cf. *Matter of George*, Int. Dec. No. 1533, B.I.A., December 16, 1965.

We affirm the order of the special inquiry officer denying respondent's application for withholding of deportation to Italy pursuant to the provisions of section 243(h) of the Immigration and Nationality Act as amended by Public Law 89–236, effective December 1, 1965.

### THE LEGALITY OF THE ORDER DIRECTING DEPORTATION TO ITALY

Counsel contends that the deportation order entered by the special inquiry officer is illegal for the reason that there is no evidence of record that the Italian Government is presently willing to accept the respondent as a deportee. Counsel takes the position that section 243(a) of the Immigration and Nationality Act (8 U.S.C.

1253(a)) provides for orders of deportation to alternate countries only where such country is willing to accept the alien. He cites in support of his position three cases concerned with actions brought by Chinese aliens contesting the execution of orders of deportation to either Communist China on the mainland or the Nationalist Government of China on Formosa.[10] We note that counsel did not raise this issue before the special inquiry officer (R–p. 29).

The cases cited by counsel are easily distinguishable from the case before us. This case does not present the problem which often confronts the Government in dealing with aliens of Chinese origin who were born on the mainland of China prior to the time the Nationalist Government (recognized by the United States) was forced to withdraw to Formosa. The cited cases are concerned with the execution of an order of deportation and not with an administrative determination of the place of deportation in accordance with the provisions of 8 CFR 242. 8 CFR 242.8 provides the special inquiry officer with authority "to determine deportability ... (and) ... to determine the country to which an alien's deportation will be directed in accordance with section 243(a) of the Act ..." (8 U.S.C. 1253(a)).

Where there is an ancillary matter before the special inquiry officer, such as an application for a temporary withholding of deportation pursuant to section 243(h) of the Immigration and Nationality Act (supra), the current regulation (8 CFR 242.17(c)) provides that the alien shall be notified of his right to designate the country to which he wishes to be deported and that the special inquiry officer's order shall direct the alien's deportation in the first instance to the country so designated. 8 CFR 242.17(c) also provides: "The special inquiry officer shall then (namely, after directing deportation to the designated country) specify and state for the record the country or countries in the alternate, to which respondent's deportation will be directed pursuant to section 243(a) of the Act if the country of his designation will not accept him into its territory, or fails to furnish timely notice of acceptance, or the respondent declines to designate a country."

The special inquiry officer's order complies fully with the procedural pattern spelled out by the statute and the regulations set forth in 8 CFR 242. The special inquiry officer's decision makes a finding that the respondent is "a native of Italy, who claims he is

---

[10] Lu v. Rogers, 164 F. Supp. 320 (D.C. D.C. 1958), aff'd 262 F.2d 471 (C.A. D.C. 1958); U.S. ex rel. Tom Man v. Shaughnessy, 142 F. Supp. 444, D.C. S.D.N.Y. (1956); U.S. ex rel. Lee Ming Hon v. Shaughnessy, 142 F. Supp. 468 (D.C. S.D.N.Y. 1956).

now stateless" (p. 2 of the special inquiry officer opinion). The record establishes that the respondent last entered the United States through the port of New York on August 10, 1920 and that his last place of residence prior to entry was Italy (Ex. A 75). Section 243(a) of the Immigration and Nationality Act (8 U.S.C. 1253(a)) specifically states that an alien may be deported "(1) to the country from which such alien last entered the United States; (and) (3) to the country in which he was born" unless the country designated by the alien is willing to accept him. Accordingly, we find no basis for counsel's assertion that the order entered by the special inquiry officer is illegal. It is elementary that before such a claim of illegality can be made there must be a final order of deportation after appropriate administrative and judicial review. Otherwise, there would be no point in negotiating with a foreign country to determine whether it will accept a deportee.

Counsel also urges error in that the order entered by the special inquiry officer does not conform to section 8(b) of the Administrative Procedure Act which requires findings of fact, conclusions of law together with the reasons or basis for the administrative action on material issues of fact, law and discretion. We find no error. The special inquiry officer's decision does make a finding with regard to the place of the alien's birth and there is evidence of record that Italy is the country of his last residence prior to entering the United States (p. 2, special inquiry officer opinion and Ex. A 75). Furthermore, the procedural requirements of the Administrative Procedure Act are not applicable to deportation proceedings under the immigration laws. *Marcello v. Bonds*, 349 U.S. 302, 99 L.ed. 1107 (1955). There is no requirement in either the statute or the regulations that the special inquiry officer make formal findings of fact and conclusions of law to support an order deporting an alien to a foreign port or place.

We find no substance to counsel's claim that the order entered by the special inquiry officer directing the respondent's alternate deportation to Italy is illegal. The order is hereby affirmed.

### CONCLUSION

The respondent, now 68 years of age, has resided in the United States for more than 45 years. He last entered the United States with fraudulent documents on August 10, 1920. He married a lawfully resident alien in 1927 (pp. 109–110). Three children have been born of the marriage, a daughter and two sons. Both of the respondent's sons served in the United States Army and were honorably discharged. There is evidence that one of his sons is

580

mentally ill but capable of handling his own financial affairs. He receives compensation amounting to $250 per month from the Veterans Administration (Exs. A 69 & 70).

A physician, called by the respondent, testified that in his opinion the respondent's deportation would have an injurious effect on his health and life. He diagnosed the respondent's physical condition as follows: coronary insufficiency, hypertension due probably to art-eriosclerosis and emotional factors, a deteriorated kidney, enlargement of the prostate gland, diabetes and low grade anemia (Ex. A 68). The physician expressed his belief that the respondent's deportation may cause a relapse in the condition of his mentally ill son. The witness concedes, however, that the respondent has had a kidney ailment since the removal of one of his kidneys in 1948 and that he (respondent) has been afflicted with diabetes since 1942 (pp. 63 & 64).

Against this background of long residence in the United States after a fraudulent entry, close family ties in the United States and rather poor physical condition, we have a 68-year-old alien who committed two homicides in Italy prior to his entry (Ex. 36); an alien who obtained a fraudulent naturalization in 1928; an alien who was convicted of conspiracy to commit extortion in 1943 and sentenced to ten years' imprisonment [11] (Exs. A 64 & A 65); an alien whose fraudulent naturalization was revoked in 1957; and an alien who was convicted for income tax evasion in 1959 and sentenced to three years' imprisonment and a $15,000 fine.[12]

A careful review of the voluminous record clearly establishes that the respondent's plea for administrative grace is based primarily on negative evidence concerned with his criminal convictions, the source from which he has derived the major portion of his income over the past 35 years and the alleged unfairness of the conduct of the reopened hearing by the special inquiry officer rather than affirmative evidence of his rehabilitation and present worth in the community in which he resides. The respondent did not produce a single witness or affidavit to establish his reputation or support his claim of good moral character. There is nothing to show that the respondent is aware of the gravity of his past misconduct. His counsel, in fact, stated for the record, "I concede that his (respondent's) reputation is not good, yes, but I don't concede that there is justification for it." (R-p. 37)

---

[11] He served three years and eight months of the ten-year sentence and was paroled (Ex. A 94, pp. 2 & 10).

[12] The respondent was incarcerated from July 1, 1959 until October 21, 1961, continuing on probation for an additional period of three years.

We have fully considered the humanitarian aspects of the respondent's case. It is difficult if not impossible to define any standard for judging discretionary matters of the nature presented by this case. We have in the past exercised the discretion given the Attorney General by the immigration laws to waive criminal grounds of exclusion where the record affirmatively establishes: (1) long residence in the United States; (2) close family ties in the United States who would be adversely affected by the denial of discretionary relief; (3) the crime or crimes committed by the alien are remote from the date of the application for discretionary relief, and most important of all (4) there is an affirmative showing of genuine reformation over a reasonable period of time.

We find no substantial evidence in this record which would support a claim of genuine reformation and rehabilitation on the part of the respondent. He refused to answer questions concerning his reputation in the City of Chicago (R–pp. 338–341). He refused to comply with the special inquiry officer's repeated directives to furnish a net-worth statement and other information concerning the source of his income which according to his income tax returns amounted to more than $100,000 during the years of 1959 and 1962 (Exs. A 80, A 85 & A 86) (R–pp. 320, 349, 350, 378). He refused to answer questions as to whether he had ever engaged in bootlegging or extortion; whether he had ever been associated with a group engaged in illegal activities; and whether he had ever received any monetary payments from such a group or from such activities (R–pp. 291–292).

The respondent's refusal to answer such questions leaves only one inference, namely, that his illegal activities are of a continuing nature. He has submitted no affirmative evidence of a genuine reformation and rehabilitation although the burden is upon him to support his application for discretionary relief with such evidence. Under the circumstances, we have no other alternative but to dismiss the appeal. An appropriate order will be entered.

ORDER: The order entered by the special inquiry officer denying relief under sections 249, 212(h) and 243(h) of the Immigration and Nationality Act, as amended, is hereby affirmed.

It is further directed that the appeal be and the same is hereby dismissed.