**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN PABLO GUTIERREZ,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 06-71680

Agency No.
A092-227-488

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 25, 2011—San Francisco, California

Filed November 7, 2011

Before: Sidney R. Thomas and Sandra S. Ikuta,
Circuit Judges, and Jane A. Restani, Judge.*

Opinion by Judge Restani

*The Honorable Jane A. Restani, Judge for the United States Court of
International Trade, sitting by designation.

20077

**COUNSEL**

Fernando Quiñones (withdrawn) and Michael Grim (withdrawn), Law Offices of Fernando Quiñones, San Francisco, California, for the petitioner-appellant.

Stephen J. Flynn, Arthur Leonid Rabin, Mark Christopher Walters, Sunah Lee, and Gladys Marta Steffens Guzman, U.S. Department of Justice, for the respondent-appellee.

Allison L. Ehlert and Matthew Carter Dirkes, Coblentz, Patch, Duffy & Bass, LLP, San Francisco, California, amicus curiae.

**OPINION**

RESTANI, Judge:

Petitioner Juan Pablo Gutierrez petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding the Immigration Judge's ("IJ") denial of registry, cancellation of removal, and voluntary departure on grounds of alleged constitutional violations and that as a matter of law the administrative record cannot support a finding that he lacked good moral character. We conclude that we lack jurisdiction to review some of Gutierrez's claims, and where we

do possess jurisdiction, Gutierrez's claims fail on the merits. Thus, we DENY the petition for review in part and DISMISS in part.

## BACKGROUND

Gutierrez is a seventy year-old native and citizen of Mexico who entered the United States sometime between 1969 and 1971. Gutierrez is not married and has no children. Gutierrez's mother and brother are United States citizens, and his sister and other brother are lawful permanent residents of the United States. In October 2001, Gutierrez was issued a Notice to Appear, charging him with being removable from the United States as an alien who was present in the United States without being admitted or paroled, in violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. 8 U.S.C. § 1182(a)(6)(A)(i).

Gutierrez appeared before an IJ and conceded his removability from the United States. For relief from removal, Gutierrez requested registry, cancellation of removal, and voluntary departure. During the hearing, Gutierrez presented evidence including that of his good moral character. Gutierrez also moved to present the telephonic testimony of three witnesses regarding the issue of his good moral character, claiming the witnesses were unavailable due to pre-established work commitments. The IJ considered the motion despite its untimeliness but disallowed the telephonic testimony because Gutierrez had failed to provide affidavits from these witnesses as to why they could not be present and because there were other witnesses who could testify to Gutierrez's good moral character. Three of Gutierrez's family members testified to his good moral character.

Gutierrez testified, admitting that he was arrested and pled guilty approximately seven or eight times between 1978 and 2001 for driving under the influence ("DUI") offenses and arrested for driving without a license at least once. Gutierrez

served eight months in prison as a result of these arrests. His last offense occurred in August 2001, and Gutierrez had not paid his fine as of the date of his April 2004 hearing. When the IJ asked Gutierrez if he was currently driving with a suspended license, Gutierrez's attorney stated that Gutierrez was invoking his right to remain silent despite an admonition from the IJ that the hearing was not a criminal proceeding and a negative inference could be drawn from his silence. Gutierrez testified that he had not drunk alcohol since 2001 and was currently attending Alcoholics Anonymous meetings twice a week.

The IJ denied Gutierrez's applications for relief. Although the IJ found the testimony of Gutierrez as well as Gutierrez's mother and brother credible, the IJ denied his applications for cancellation of removal, voluntary departure, and registry because the IJ found that Gutierrez lacked good moral character and had not demonstrated "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). With regard to the application for relief for registry, the IJ determined that "there is no requisite time period for good moral character for registry" and that because of Gutierrez's "numerous criminal convictions for driving under the influence" and the fact that "the respondent is currently still driving even on a suspended driver's license, . . . this Court does not believe that in its discretion it [is] appropriate to grant the respondent registry." Based on a lack of exceptional and extremely unusual hardship as well as a lack of good moral character, the IJ also denied Gutierrez's petition for cancellation of removal.

In August 2005, the BIA adopted and affirmed the IJ's decision and dismissed Gutierrez's appeal. The BIA sua sponte reopened and reconsidered Gutierrez's appeal,[1] concurring with the IJ that Gutierrez failed to establish his good

---

[1]The BIA's prior decision "inadvertently included a reference to a 'practice of persecution . . . of ethnic Chinese Christian' which was not part of the Immigration Judge's decision or record in this case."

moral character and exceptional and extremely unusual hardship for obtaining registry and cancellation of removal, based on "the reasons stated by the Immigration Judge in his decision." The BIA determined that the IJ correctly drew an adverse inference from Gutierrez's silence. The BIA also rejected Gutierrez's claim that the IJ's rejection of the telephonic witnesses violated due process. Gutierrez sought review of the BIA's order denying registry, cancellation of removal, and voluntary departure.[2]

## *STANDARD OF REVIEW*

The BIA adopted and affirmed the decision of the IJ pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994). Where the BIA does not express any disagreement with the IJ's reasoning or conclusions, we revisit both decisions and treat the IJ's reasons as those of the BIA. *See Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1012 (9th Cir. 2009). "[W]e have jurisdiction to determine whether jurisdiction exists," *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000) (internal quotation marks and citation omitted), and we review issues regarding jurisdiction and the BIA's legal conclusions de novo, *see Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1141 (9th Cir. 2005). We review constitutional and other questions of law de novo. *See Khan v. Holder*, 584 F.3d 773, 776 (9th Cir. 2009).

## *JURISDICTION TO REVIEW DENIAL OF REGISTRY DECISIONS*

Amicus argues that we have jurisdiction to review the entirety of the IJ's decision regarding Gutierrez's denial of registry. Specifically, Amicus argues that the IJ based his decision on a statutory per se category rather than his discre-

---

[2]We received supplemental briefing and oral argument from amicus curiae and the Government after Gutierrez's lawyer withdrew from the case.

tionary authority and therefore this panel need not reach the issue of jurisdiction over discretionary decisions. In the alternative, Amicus argues that we retain jurisdiction to review statutory determinations regarding good moral character. We agree with the latter argument. In addition, we retain jurisdiction to decide issues of law, including constitutional claims.[3] 8 U.S.C. § 1252(a)(2)(D).[4]

**[1]** Since the Real ID Act of 2005, we have not determined whether we have jurisdiction over decisions of the Attorney General denying registry. The applicable provision states that:

> [N]o court shall have jurisdiction to review . . . (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . .

*Id.* § 1252(a)(2)(B). According to 8 U.S.C. § 1259, the statute

---

[3]The Real ID Act of 2005 explicitly authorized such judicial review by adding the following language to 8 U.S.C. § 1252(a)(2)(D): "Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law . . . ." Real ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310 (2005) (codified as amended at 8 U.S.C. § 1252(a)(2)(D)). Furthermore, we have noted that errors of law may infect discretionary decisions. *See Bazua-Cota v. Gonzales*, 466 F.3d 747, 748 (9th Cir. 2006) (per curium) (finding jurisdiction to review colorable legal and constitutional claims even where the decision was purely discretionary).

[4]To the extent Gutierrez asserts that the IJ's decision denying cancellation of removal under 8 U.S.C. § 1229b and voluntary departure under 8 U.S.C. § 1229c was not warranted by the record, such claims are expressly barred from judicial review. 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b, 1229c . . . of this title" except for constitutional and other legal questions).

under which Gutierrez was denied registry, the IJ may grant registry if the alien establishes certain facts, including that he is of good moral character. *Id.* § 1259 (registry "may, in the discretion of the Attorney General . . . , be made in the case of any alien"). Although registry under Section 1259 is not expressly listed as a section for which judicial review is barred, *see* 8 U.S.C. § 1252(a)(2)(B)(i), we do not have jurisdiction to review "any other decision or action of the Attorney General . . . the authority for which *is specified* under this subchapter to be in the discretion of the Attorney General," *id.* § 1252(a)(2)(B)(ii) (emphasis added).[5] Section 1259 explicitly states that registry is "in the discretion of the Attorney General." *Id.* § 1259. Thus, to the extent the challenged decision was a legally permissible exercise of that discretion, we lack jurisdiction to review it.

**[2]** Here, in denying Gutierrez's application for registry, the IJ "noted that [registry] is a relief in the discretion of [the IJ]," and that he did "not believe that the respondent has demonstrated good moral character and believes that in its discretion, it is inappropriate for [the IJ] to grant the respondent registry." Although Section 1101(f) lists nine circumstances that, if true in a particular alien's case, preclude a finding of good moral character, the IJ did not rely on any of the items listed therein.[6] Rather, the IJ based his conclusion on Gutier-

---

[5]We stated in *Beltran-Tirado* that we had jurisdiction to review denial of registry based purely on the omission of registry from the list of statutory provisions placed beyond our jurisdiction by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Beltran-Tirado v. INS*, 213 F.3d 1179, 1182 n.4 (9th Cir. 2000) (citing IIRIRA, Pub. L. No. 104-208, § 309(c)(4)(E)). *Beltran-Tirado*, however, addressed the legal question of whether conviction under 42 U.S.C. § 408 constitutes a crime of moral turpitude under 8 U.S.C. § 1182(a)(2)(A). *Id.* at 1184-85. The Real ID Act made explicit the holding of *Beltran-Tirado*: we have jurisdiction over legal questions involving denial of registry claims.

[6]The preclusive categories include an individual who is or was "during the period for which good moral character is required to be established . . . a habitual drunkard." 8 U.S.C. § 1101(f). Here, the IJ's decision was based on Gutierrez's crimes rather than whether or not he was a habitual drunkard under the statute.

rez's "numerous criminal convictions for driving under the influence . . . from 197[8] to 2001,"[7] as well as the fact that Gutierrez was currently driving on a suspended license. The BIA concurred, stating that "[w]e agree with the Immigration Judge that the respondent failed to establish the requisite good moral character for the requested forms of relief." Because the IJ made no mention of per se good moral character except to restate the Government's argument and instead relied on actions falling outside Section 1101(f), the IJ made a general finding of lack of good moral character, a statutory requirement for registry.[8]

[3] We have jurisdiction to review this determination. As we made clear in *Singh v. Holder*, 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude from review factual decisions unless "the language of the statute in question . . . provide[s] the discretionary authority for the Attorney General's action." *Singh v. Holder*, 591 F.3d 1190, 1194 (9th Cir. 2010) (alteration in original) (internal quotation marks omitted) (citing *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003)). In *Singh*, we addressed the statutory requirements for eligibility for hardship waiver of the requirements for permanent residence status, holding that by stating "[t]he Attorney General, in the Attorney General's discretion, may" grant relief, 8 U.S.C. § 1186a(c)(4), the ultimate decision was "specified" to be in the Attorney General's discretion.[9]

---

[7]The IJ misstated the date as 1970. The BIA subsequently correctly stated the date as 1978.

[8]The BIA did refer to the habitual drunkard provision in saying it had no authority to decide constitutional issues. We interpret this to be a convenient disposition of an issue rather than an altering of the IJ's broad basis for his decision. Accordingly, as Gutierrez was not removed under this statute, he lacks standing to challenge the "habitual drunkard" language in 8 U.S.C. § 1101(f)(1) for unconstitutional vagueness as applied. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1494 (9th Cir. 1996) (stating that petitioner cannot challenge a statutory provision on vagueness grounds when it was not used against him).

[9]In relevant part, Immigration and Nationality Act § 216(c)(4) provides:

(4) Hardship waiver

*Singh*, 591 F.3d at 1194. *Singh* also concluded that the phrase, "[t]he determination of what evidence is credible and the weight to be given that evidence shall be *within the sole discretion of the Attorney General*," 8 U.S.C. § 1186a(c)(4) (emphasis added), sufficed to commit such decisions to the Attorney General's discretion. *Singh*, 591 F.3d at 1195. In contrast, the language providing that the Attorney General could grant relief if the alien "demonstrate[d]" that certain criteria were met did not "commit[ ] to the Attorney General's discretion the question whether" those criteria were satisfied. *Id.* at 1194-95 (emphasis and internal quotation marks omitted). Here, the "establishes" language in Section 1259 is akin to the "demonstrates" language of Section 1186a(c)(4). Just as *Singh* held that the IJ's and BIA's underlying factual determinations were not specified to be in the discretion of the Attorney General, nothing in sections 1252 or 1259 specifies that

---

The *Attorney General, in the Attorney General's discretion, may* remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) *if the alien demonstrates that—*

(A) extreme hardship would result if such alien is removed,

(B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), or

(C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault in failing to meet the requirements of paragraph (1).

. . . The determination of what evidence is credible and the weight to be given that evidence shall be *within the sole discretion of the Attorney General*.

8 U.S.C. § 1186a(c)(4) (emphases added).

the good moral character decision is committed to the discretion of the Attorney General. As a result, Section 1252(a)(2)(B)(ii) does not strip us of jurisdiction over the IJ's decision regarding Gutierrez's moral character.[10]

Thus, we turn to Gutierrez's claims regarding, 1) the extent to which an assessment of good moral character can be based only on the immediate present and whether there was substantial evidence supporting the finding of lack of good moral character for purposes of registry, 2) procedural due process, and 3) the Fifth Amendment.

---

[10]Assessing jurisdiction over good moral character determinations under IIRIRA's transitional rules, we stated that "[t]he transitional rules . . . preclude direct judicial review of the BIA's determinations of the threshold eligibility requirements of . . . 'good moral character.' " *Kalaw v. INS*, 133 F.3d 1147, 1152 (9th Cir. 1997), *superseded by statute*, 8 U.S.C. § 1252(a)(5), *as recognized in Trejo-Mejia v. Holder*, 593 F.3d 913, 915 (9th Cir. 2010). *Kalaw* was decided pursuant to IIRIRA's transitional rules under Section 309(c)(4)(E), which stripped us of jurisdiction over "discretionary decision[s]" under Immigration and Nationality Act § 244 and which governed suspension of deportation, the form of relief at issue in *Kalaw*. *See Kalaw*, 133 F.3d at 1150. Under these transitional rules, all that was required to strip jurisdiction was a demonstration that the case arose under one of the listed sections, and the decision in question was discretionary. *See id. Kalaw* confined itself to a discussion of whether the particular analyses at issue in the suspension of deportation decision (which subsumed the determination of good moral character) were discretionary or not. *See id.* at 1151-52. After the Real ID Act of 2005, we lack jurisdiction under Section 1252(a)(2)(B)(ii) only over discretionary decisions "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Because the statute at issue in *Kalaw* did not include the "is specified" language, *Kalaw* provides no guidance on the question of our jurisdiction pursuant to Section 1252(a)(2)(B)(ii).

## *DISCUSSION*

### I.  Good Moral Character

Gutierrez argues that an applicant for registry need show only that he is a person of good moral character in the immediate present without reference to past negative conduct. Specifically, Gutierrez argues that the word "is" in 8 U.S.C. § 1259(c) refers unambiguously to the present moment without reference to past events. This claim lacks merit.

**[4]** Although Congress has not mandated a specific temporal window for demonstration of good moral character in registry claims, for other claims the IJ can look back at evidence of good moral character from past time periods, specifically, five years for citizenship, 8 U.S.C. § 1427(a), ten years for cancellation of removal, *id.* § 1229b(b)(1)(A), and five years for voluntary departure, *id.* § 1229c(b)(1)(B). Thus, the time periods for other moral character inquiries under immigration law support the reasonableness of interpreting Section 1259 to permit looking back to some past time period to determine whether a person is of good moral character. *See id.* § 1259(c). Gutierrez's past actions bear on his current moral character. *See Matter of Sanchez-Linn*, 20 I. &. N. Dec. 362, 365 (B.I.A. 1991) (finding that the IJ must look back to some period preceding the moment a petitioner is standing before a judge). We need not and, for that matter, cannot restrict the IJ or BIA to the immediate present for determining if a petitioner is of good moral character. *See id.* "[A]n applicant for registry must show good moral character for a 'reasonable period of time' preceding the application." *Id.* (quoting *Matter of De Lucia*, 11 I. & N. Dec. 565, 575 (B.I.A. 1966)). "What is a 'reasonable period of time' will vary depending on the specific facts of a case." *Id.* Indeed, in some circumstances, facts from the whole sweep of a person's life may properly be considered by the IJ. *Id.*

**[5]** Here, the IJ made a multifaceted determination based on conduct stretching back many years, but leading up to the time of the hearing: eight months in prison, seven or eight DUI convictions with the most recent three years prior to the hearing, and driving with a suspended license at the time of the hearing. The IJ looked at facts bearing on lack of good moral character that continued into at least the five years preceding the immigration hearing. There is no basis to find that the IJ was restricted to a time period shorter than the shortest time period for the good moral character inquiry specified in other immigration provisions. Thus, the IJ looked back to a permissible period of time in determining that Gutierrez lacked good moral character.[11]

A finding of good moral character involves subjective assessments and weighing of types of evidence that will vary considerably from case to case but clearly here there is enough evidence of wrongdoing over time that it cannot be said that the IJ's decision was without sufficient evidenciary support. Where this type of general and somewhat amorphous question must be answered, considerable deference to the fact-finder is warranted. In this case in particular, with the history of repeated criminal acts, we will not second guess the IJ.

---

[11]Gutierrez also argues that the IJ and BIA, unlike the BIA in *Sanchez-Linn* and *De Lucia*, failed to consider any positive factors and violated his right to equal protection. There is no evidence to support Gutierrez's claim that the IJ failed to consider positive factors before deciding that he was not of good moral character for the purposes of registry. In fact, the IJ discusses the testimony of Gutierrez's three family members at length, stating that he did "not doubt the veracity of any of the witnesses." Furthermore, the other petitioners noted by Gutierrez did not obtain relief. *See Sanchez-Linn*, 20 I. &. N. Dec. at 365-66, 367; *De Lucia*, 11 I. & N. Dec. at 582. Because he cannot show that his treatment "differed from that of similarly situated persons," Gutierrez's equal protection claim is unavailing. *See Dillingham v. INS*, 267 F.3d 996, 1007 (9th Cir. 2001), *overruled on other grounds by Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. July 14, 2011) (en banc).

## II. Due Process

Gutierrez alleges that the IJ's decision not to allow certain witnesses to testify telephonically violated local procedural rules and his right to due process. This claim lacks merit.

A full and fair hearing is one of the due process rights afforded to aliens in deportation proceedings. *See Getachew v. INS*, 25 F.3d 841, 845 (9th Cir. 1994). A court will grant a petition on due process grounds only if the proceeding was "so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006); *see Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir. 1983) ("[T]he only limitation upon its procedure [is] that a hearing, though summary, must be fair." (quoting *Navarrette-Navarrette v. Landon*, 223 F.2d 234, 237 (9th Cir. 1955)). An alien bears the burden of proving the alleged violation prejudiced his or her interests. *See United States v. Cerda-Pena*, 799 F.2d 1374, 1378-79 (9th Cir. 1986).

**[6]** The IJ did not violate Gutierrez's due process rights by excluding the telephonic testimony of three witnesses because, in addition to the untimeliness of the request, there were other witnesses present and prepared to testify in person as to the same character evidence. Gutierrez failed to show that he was prejudiced by the exclusion of these witnesses. Additionally, petitioner's reliance on *Zolotukhin v. Gonzales*, 417 F.3d 1073 (9th Cir. 2005), is misplaced because the excluded telephonic testimony in this case was not from uniquely qualified expert witnesses and others with specific and noncumulative testimony, but rather from witnesses who planned to testify to Gutierrez's good moral character and continuous presence in the United States, which were the same types of evidence nine other witnesses were prepared to provide. Gutierrez had an opportunity to fully present his case. Accordingly, no due process violation occurred.

### III. Fifth Amendment

**[7]** Gutierrez alleges that the IJ erred in drawing an adverse inference when he invoked the Fifth Amendment right against self-incrimination when asked if he was driving on a suspended license. This claim lacks merit. The IJ was permitted to draw an adverse inference when Gutierrez refused to answer whether he was driving on a suspended license. *See United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154-55 (1923). In a deportation hearing there is no prohibition against drawing an adverse inference when a petitioner invokes his Fifth Amendment right against self-incrimination. *See id.*; *United States v. Alderete-Deras*, 743 F.2d 645, 647 (9th Cir. 1984). Accordingly, there was no Fifth Amendment violation.

### *CONCLUSION*

For the foregoing reasons, the petition for review is **DENIED** in part and **DISMISSED** in part.