**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BALBIR SINGH,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 07-73792

Agency No.
A70-545-931

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 6, 2009—San Francisco, California

Filed January 8, 2010

Before: Mary M. Schroeder and Marsha S. Berzon,
Circuit Judges, and Lyle E. Strom,* District Judge.

Opinion by Judge Berzon

*The Honorable Lyle E. Strom, Senior United States District Judge for
the District of Nebraska, sitting by designation.

701

**COUNSEL**

Martin Avila Robles, Immigration Practice Group, P.C., San Francisco, California, for petitioner Balbir Singh.

Eric W. Marsteller, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for respondent Eric H. Holder Jr.

**OPINION**

BERZON, Circuit Judge:

Balbir Singh, a native and citizen of India, was granted conditional permanent residence in this country when he married a United States citizen but lost that status when his wife withdrew her support from their joint petition for permanent residence. Singh now petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his application for a hardship waiver of the joint petition requirement. Before considering the merits of Singh's petition we must decide whether we have jurisdiction to review the BIA's determination that Singh's removal would not result in "extreme hardship."

We hold that we may review the threshold question whether an alien has demonstrated "extreme hardship" and is thus eligible for a waiver of the joint filing requirement to remove the conditions on residence. Because the BIA did not err in its hardship determination, we deny Singh's petition for review.

## I.   BACKGROUND

Balbir Singh entered the United States in 1992. Three years later, he married Lidia Medina, a U.S. citizen, and so was able to adjust his status to become a conditional permanent resident. To remove the conditional status, Singh and Medina were required to file a joint petition before the second anniversary of Singh's obtaining lawful status. *See* Immigration and Nationality Act ("INA") § 216(c)(1)(A), (d)(2)(A), 8 U.S.C. § 1186a(c)(1)(A), (d)(2)(A). Such a petition must state that the marriage is proper and was not entered into for immigration purposes. INA § 216(d)(1)(A)(i), 8 U.S.C. § 1186a(d)(1)(A)(i).

Singh and Medina timely filed a joint petition. They appeared for an interview before an Immigration Service officer on August 12, 1998. At the interview, however, Medina signed a sworn statement declaring the couple had married for the sole purpose of obtaining immigration benefits and withdrew her signature from the joint petition. The next day, the INS served Singh with a Notice to Appear, charging that he was removable under INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i), because his conditional permanent resident status had been terminated.[1]

---

[1]The original Notice to Appear alleged that Singh's "status was terminated on August 12, 1998, because [his] marriage to Lidia Medina was entered into for the sole purpose of . . . obtaining the status of lawful admission for permanent residence." Later, the INS amended the charge, providing the following reason for termination: "Lidia Medina withdrew her signature from the Form I-751, Petition to Remove the Conditions on Residence . . . ."

The following year, Singh filed a second petition, this time seeking a waiver of the joint filing requirement. The Attorney General or his designee "may remove the conditional basis of the permanent resident status for an alien who fails to meet" the joint filing requirement "if the alien demonstrates that . . . extreme hardship would result if such alien is removed." INA § 216(c)(4)(A), 8 U.S.C. § 1186a(c)(4)(A). The INS district director denied Singh's petition in 2002. A third petition, submitted in 2003, again sought a waiver of the joint filing requirement and again was denied.

Before the immigration judge ("IJ"), Singh conceded removability, and the parties stipulated that the only issue for review was the district director's denial of the hardship waiver. The IJ held a merits hearing and issued a decision denying Singh's application for a hardship waiver. Although the IJ found Singh credible, he concluded that Singh had not demonstrated that extreme hardship would result if he were removed.

During the IJ hearing Singh testified that he had no children and had not divorced Medina. Singh has three sisters, two of whom live in the United States and are U.S. citizens; the third is a British citizen who lives in England. At the time of the hearing Singh lived with one of his sisters and her family, including her sons, 18 and 20. Singh was close to his nephews and helped support the family after his brother-in-law underwent heart surgery.

Singh's parents are dead. His mother and older brother were shot and killed by "terrorists" in Punjab, India, in 1991, and his father died from an infection in 2000. Singh testified that he "remain[s] depressed" about these deaths, but when he becomes upset, he sits and talks with his sisters, which helps him feel better. Singh saw a psychologist several times; the last consultation took place in 1999.

As a truck driver, Singh owned his own rig and earned $90,000-$95,000 annually. In comparison to the $10,000 per

month he could earn driving a truck in the United States, he might earn $200 per month in India. Singh did not own any real estate in the United States at the time of the hearing; he and his siblings had inherited their father's house in India. Singh had traveled to India five times since he first arrived in the United States. Although he had no immediate family remaining in India, a nephew still lived there.

The IJ summarized Singh's hardship claim as follows: (1) in India, Singh lacks a job and would have a lower standard of living; (2) he would be separated from his family; and (3) he would face "cultural difficulties," given the length of time he has spent in the United States. Because "economic hardship and cultural social uprooting are . . . hardships suffered by every alien who has spent a considerable period of time in the United States," the IJ held, Singh did not meet the extreme hardship standard. The IJ also noted that Singh was young and healthy, possessed assets that could be sold to finance his return to India, spoke the language in India, and had spent much of his life there.

Singh appealed to the BIA, which conducted a de novo review and affirmed the decision of the IJ. Singh timely filed a petition for review with this court.

## II. JURISDICTION

[1] The first question we must answer is whether we have jurisdiction to review the BIA's hardship determination. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") eliminated our "jurisdiction to review . . . any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General." INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii). This provision does not, however, "preclud[e] review of constitutional claims or questions of law raised upon a petition for review

filed with an appropriate court of appeals." INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

**[2]** Even as to factual issues, § 242(a)(2)(B)(ii)[2] precludes judicial review of a decision made under a particular statute only when "the language of the statute in question . . . provide[s] the discretionary authority" for the Attorney General's action. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003). "For a statutory provision to strip this court of jurisdiction under [§ 242(a)(2)(B)(ii)], the provision must specify that 'the right or power to act is entirely within [the Attorney General's] judgment or conscience.' " *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1142 (9th Cir. 2005) (quoting *Spencer Enters.*, 345 F.3d at 690).

The full text of § 216(c)(4), the waiver provision we consider here, provides:

> (4) Hardship waiver
>
> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) if the alien demonstrates that —
>
>> (A) extreme hardship would result if such alien is removed,
>>
>> (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the requirements of paragraph (1), or

---

[2]All statutory citations refer to the INA, unless otherwise noted.

> (C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse or child was battered by or was the subject of extreme cruelty perpetrated by his or her spouse or citizen or permanent resident parent and the alien was not at fault in failing to meet the requirements of paragraph (1).

> In determining extreme hardship, the Attorney General shall consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis. In acting on applications under this paragraph, the Attorney General shall consider any credible evidence relevant to the application. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General. The Attorney General shall, by regulation, establish measures to protect the confidentiality of information concerning any abused alien spouse or child, including information regarding the whereabouts of such spouse or child.

Under this provision, granting a waiver involves two steps: First, the Attorney General or his designee (here, the BIA) must determine whether the petitioner has demonstrated that he meets one of three alternative criteria. *See* § 216(c)(4)(A)-(C). Second, if the petitioner has so demonstrated eligibility, the BIA "may" grant the waiver. § 216(c)(4).

**[3]** The second-order decision whether to grant a waiver is unambiguously "left to the discretion of the Attorney General." *Damon v. Ashcroft*, 360 F.3d 1084, 1090 (9th Cir. 2004). The statutory text specifies that "[t]he Attorney General, in the Attorney General's discretion, may" grant a waiver if the alien has demonstrated his eligibility. § 216(c)(4). The ultimate decision whether to grant a waiver is therefore unre-

viewable under § 242(a)(2)(B)(ii). *See Atsilov v. Gonzales*, 468 F.3d 112, 116 (2nd Cir. 2006) (per curiam).

**[4]** In contrast, the waiver provision does not specify that the power to determine whether extreme hardship exists "is entirely within [the Attorney General's] judgment or conscience." *Oropeza-Wong*, 406 F.3d at 1142 (quoting *Spencer Enters.*, 345 F.3d at 690). Instead, it provides that the Attorney General may grant a waiver "*if the alien demonstrates . . . that extreme hardship would result.*" § 216(c)(4) (emphasis added). There is no language at all committing to the Attorney General's discretion the question whether the alien has successfully demonstrated extreme hardship.

In addition to making discretionary the ultimate decision whether to grant a waiver, the statute also provides that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." § 216(c)(4).[3] Thus, twice in this very

---

[3]This case gives us no occasion to consider the extent to which we may review adverse credibility determinations or weigh evidence under this provision. Singh is not asking us to reweigh the evidence. Nor does the government cite this statutory language as barring our review here.

*Oropeza-Wong* held that "the second statutory statement regarding the Attorney General's discretion does not bar our review of claims involving credibility determinations in cases regarding statutory waivers under [§ 216(c)(4)]." 406 F.3d at 1147. That holding has received some criticism. *See Contreras-Salinas v. Holder*, 585 F.3d 710, 713-14 & n.4 (2d Cir. 2009) (disagreeing with *Oropeza-Wong* and holding that credibility determinations under § 216(c)(4) are unreviewable). Regardless of whether *Oropeza-Wong* is correct, we could still review an eligibility determination for substantial evidence without reweighing the evidence or revisiting credibility findings. Generally, the INA requires us to apply the substantial evidence standard in reviewing orders of removal, *see* INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B) (providing that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"). We perceive no conflict between that standard and the "sole discretion" language in § 216(c)(4). Both the Eighth and First Circuits have reached the same conclusion. *See*

provision Congress did specify that the power to act is in certain regards within the Attorney General's discretion. It is a familiar principle of statutory construction that "where Congress includes particular language in one section of the statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir. 2001) (en banc) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (alteration omitted)). The absence of any similar language specifying that the Attorney General has discretion to determine whether extreme hardship exists compels us to conclude that this determination is not committed to the Attorney General's discretion and so is reviewable. This view of the statutory waiver provision is consistent with our interpretation of the provisions governing the granting of asylum, as discussed in *Spencer Enterprises*. *See* 345 F.3d at 690 ("Despite the fact that there may be many non-discretionary elements of asylum eligibility, the ultimate authority whether to grant asylum rests entirely in the discretion of the Attorney General.").

Our conclusion also comports with our holding in *Oropeza-Wong* that "determinations made with respect to statutory waivers under [§ 216(c)(4)] are not purely discretionary and

---

*Ibrahimi v. Holder*, 566 F.3d 758, 764 (8th Cir. 2009) (holding that § 216(c)(4) "prevent[s] us from exercising jurisdiction to pass upon the credibility and weight of the evidence that a petitioner has presented in an attempt to establish eligibility for a waiver of the joint-filing requirement," but *not* "from asserting jurisdiction to make a determination of what constitutes [eligibility] and whether the credited evidence meets that standard"); *Cho v. Gonzales*, 404 F.3d 96, 102 (1st Cir. 2005) (comparing "the 'sole discretion' provision (narrowly directed to the question of what evidence is credible and how much weight it should be given) and the substantial evidence standard of review . . . which merely looks to whether an agency determination is reasonably grounded in the administrative record and has never properly been understood to permit a reviewing court either to substitute its own credibility findings for those made by the agency or to weigh the credited evidence itself").

are therefore generally subject to review."⁴ 406 F.3d at 1142. There, we considered whether we had jurisdiction to review the threshold determination that a marriage was not "entered into in good faith." *Id.* at 1142-43. We observed that under § 242(a)(2)(B)(ii), "[u]nless the disputed determination is purely discretionary — unless there are no questions of fact or law at issue — judicial review is not precluded." *Id.* at 1142. We concluded that petitions for statutory waivers on the basis of a good faith marriage "involve legal and factual questions that are not subject to the pure discretion of the IJ or BIA." *Id.* at 1143. We noted as well that decisions made under the two other listed criteria, extreme hardship and extreme cruelty, "will usually require factual and legal determinations." *Id.* at 1143 n.6 (citing *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir. 2002)).

**[5]** Indeed, the BIA's own practice strongly suggests that "extreme hardship" is a legal standard. In this case, for example, the BIA order denying Singh's petition explicitly recognized that "[t]he question of whether the facts in a given case establish the requisite level of hardship is a matter of law which we review de novo." A survey of published BIA decisions likewise reveals that the phrase "extreme hardship" refers to an ascertainable legal standard. *See, e.g.*, *Matter of Anderson*, 16 I. & N. Dec. 596, 598 (BIA 1978) (recognizing, in the suspension of deportation context, that "most deported aliens will likely suffer some degree of financial hardship," but concluding that the "extreme hardship" standard is met "only when other factors such as advanced age, severe illness, family ties, etc. combine with economic detriment to make deportation extremely hard on the alien . . . ."); *Matter of*

---

⁴Our sister circuits are divided on the question whether courts may review eligibility determinations under § 216(c)(4). *Compare Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (holding that eligibility determinations are unreviewable), *and Urena-Tavarez v. Ashcroft*, 367 F.3d 154, 161 (3rd Cir. 2004) (same), *with Nguyen v. Mukasey*, 522 F.3d 853, 854-55 (8th Cir. 2008) (holding that eligibility determinations are reviewable), *and Cho v. Gonzales*, 404 F.3d at 102 (same).

*Chumpitazi*, 16 I. & N. Dec. 629, 635 (BIA 1978) (explaining, in the suspension of deportation context, that "[extreme] hardship . . . encompasses more than the mere economic deprivation that might result from an alien's deportation from the United States . . . . [T]he readjustment of an alien to life in his native country after having spent a number of years in the United States is not the type of hardship that we have characterized as extreme . . . .") (internal citations omitted). This court, too, has contributed to the development of the standard. *See, e.g.*, *Davidson v. Immigration & Naturalization Serv.*, 558 F.2d 1361, 1363 (9th Cir. 1977) ("We have previously held that economic disadvantage alone does not constitute extreme hardship.").

**[6]** Contrary to the government's assertions, our cases holding that hardship determinations are unreviewable in the contexts of cancellation of removal and suspension of deportation are not pertinent here. As the government notes, we held in *Kalaw v. INS*, 133 F.3d 1147, 1152 (9th Cir. 1997), that hardship determinations under the IIRIRA transitional provision covering cases pending before April 1, 1997, are "discretionary" and hence unreviewable. But we did so because "[t]he language of [the suspension of deportation statute] itself commits the determination to 'the opinion of the Attorney General.' " *Id.* Thus, the otherwise similar "extreme hardship" provision in *Kalaw* differed in a crucial respect from the hardship waiver we consider: it expressly committed the determination of extreme hardship to the Attorney General's "opinion," while the provision with which we are grappling contains no similar language.

The government's reliance upon *Romero-Torres v. Ashcroft*, 327 F.3d 887 (9th Cir. 2003), fares no better. In *Romero-Torres*, we interpreted the provision limiting judicial review in the cancellation of removal context as "eliminat[-ing] jurisdiction . . . over decisions by the BIA that involve the exercise of discretion." 327 F.3d at 890. We declined to review determinations of "exceptional and extremely unusual

hardship." *Id.* at 891. The provision governing review in the cancellation of removal context, INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i), however, provides that "no court shall have jurisdiction to review . . . any *judgment* regarding the granting of relief." (emphasis added). Thus, unlike the limitation on judicial review here applicable, the limitation at issue in *Romero-Torres* does not require that the statute itself designate a determination as discretionary. The entirely separate provision here controlling, § 242(a)(2)(B)(ii), in contrast, precludes review only if "the authority . . . is *specified under this subchapter* to be in the discretion of the Attorney General." (emphasis added). Consequently, for the marriage hardship waiver — unlike the cancellation of removal provision — "jurisdiction [is] precluded not . . . because the decision at issue [is] discretionary, but [only where] that discretion [is] specified in . . . the statute in question." *Spencer Enters.*, 345 F.3d at 690.

**[7]** In short, *Spencer Enterprises* dictates the result here. Because the statute does not specify the hardship eligibility decision as one committed to agency discretion, judicial review is available.

**[8]** For the foregoing reasons, this court has jurisdiction under INA § 242(a)(2)(B)(ii) to review the BIA's determination that Singh's removal would not result in extreme hardship.

## III.   EXTREME HARDSHIP

Singh contends that the BIA and IJ erred in denying his waiver petition because: (1) the IJ limited its hardship analysis to Singh and did not consider the hardship to his family in the United States; (2) the IJ did not define the time period for which hardship was relevant, and the BIA concluded that the relevant period ended when Singh's conditional resident sta-

tus terminated in 1998; and (3) the IJ failed to consider the hardship factors in the aggregate.[5]

## A.  Whose Hardship Is Relevant

*Whose* hardship an alien must demonstrate to meet the "extreme hardship" standard under § 216(c)(4)(A) is a question of law we review de novo. The statute itself is silent on the matter: § 216(c)(4)(A) provides only that an alien is eligible for a waiver if he demonstrates that "extreme hardship would result if such alien is removed."[6] In at least one publication, the INS suggested that hardship to the waiver applicant's spouse and child could be considered. *See* "INS Responds to Marriage Fraud Questions," question no. 57, *reprinted in* 67 Interpreter Releases 314, 341 (Mar. 19, 1990); *see also* 2 Immigr. L. Serv. 2d (West) § 7:225 (2009).

**[9]** We need not decide the "whose hardship" question here. Although it is unclear which family members the IJ considered in his hardship analysis, the BIA conducted a de novo review and concluded that Singh did not support "his claim of hardship to *any of his cited family members* with evidence sufficient to establish extreme hardship." (emphasis added).

---

[5]We note that Singh's first two arguments turn on questions of law, while the third requires us to review the BIA's findings of fact. As noted, INA § 242(a)(2)(B)(ii) does not "preclud[e] review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." § 242(a)(2)(D). Our jurisdiction over questions of law "extends to questions involving the application of statutes or regulations to undisputed facts." *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007). As Singh's first two arguments fall under the questions of law category, we could reach those two arguments even if BIA decisions concerning the marriage hardship waiver were otherwise unreviewable.

[6]In contrast, the cancellation of removal statute requires an alien to establish, among other things, that "removal would result in exceptional and extremely unusual hardship *to the alien's spouse, parent, or child*, who is a citizen of the United States or an alien lawfully admitted for permanent residence." INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D) (emphasis added).

Where the BIA conducts a de novo review, "[a]ny error committed by the IJ will be rendered harmless by the Board's application of the correct legal standard." *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995); *see also Brezilien v. Holder*, 569 F.3d 403, 411 (9th Cir. 2009). Because the BIA considered hardship to all the family members discussed in Singh's testimony, Singh's claim of legal error fails.

## B. Period of Hardship Considered

The waiver provision instructs the Attorney General, in determining whether extreme hardship exists, to "consider circumstances occurring only during the period that the alien was admitted for permanent residence on a conditional basis." § 216(c)(4). Singh does not make any argument as to which circumstances would be relevant assuming his status were terminated; instead, he contends that he remains in conditional permanent resident status, so the relevant time period extends to the present.

**[10]** The BIA correctly decided that Singh's status was terminated on August 12, 1998, at the latest. Singh conceded before the IJ that his status was terminated that day. On August 12, 1998, the district director issued a Notice of Termination denying Singh's first petition in the following terms: "Because Lidia Medina withdrew her signature from the petition, the petition is no longer joint. She is no longer willing to proceed on the joint petition. Therefore, your petition does not meet the statutory and regulatory requirements and must be denied . . . . [Y]our status as a permanent resident is terminated."

Alternatively, under BIA precedent, when one party makes a written withdrawal of support from a joint petition, the petition is considered not to have been filed. *See Matter of Mendes*, 20 I. & N. Dec. 833, 838 (BIA 1994). In the case of an alien who fails to file a joint petition, permanent resident status is terminated on "the second anniversary of the alien's

lawful admission for permanent residence." INA § 216(c)(2)(A); *see also* 8 C.F.R. § 216.4(a)(6). The second anniversary of Singh's lawful status fell on April 10, 1998.

**[11]** Singh could not "extend" his conditional permanent resident status by filing additional petitions after his status had been terminated. Because Singh was a former permanent resident who lacked conditional status when he filed his second and third petitions requesting hardship waivers, he had no status to extend. *See In re Henry Stowers*, 22 I. & N. Dec. 605, 611 (BIA 1999) (holding that former conditional permanent residents may apply for a hardship waiver).

### C.   Substantial Evidence of Extreme Hardship

Finally, Singh asks us to review the IJ's determination that he will not suffer "extreme hardship" if removed to India. We review the IJ's and BIA's factual findings for substantial evidence. *See, e.g.*, *Zhao v. Mukasey*, 540 F.3d 1027, 1030 (9th Cir. 2008); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (noting that "[t]o reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it").

**[12]** In considering Singh's hardship claim, the IJ focused on the following consequences of removal: Singh does not have a job in India and would have a lower standard of living; he would be separated from his family; and he would face "cultural difficulties." On the other hand, the IJ noted, Singh has spent most of his life in India, speaks the language, and has traveled there several times since leaving. Additionally, Singh is young and healthy, and he has assets he could sell to finance his return to India. It is somewhat unclear from the record whether the IJ considered the hardship factors separately or in the aggregate; he never explicitly stated which he was doing.

**[13]** The BIA conducted a de novo review and "affirm[ed] the Immigration Judge's conclusion that the respondent has

not carried his burden of demonstrating the requisite level of hardship either individually or in the aggregate." Assuming the IJ was required to aggregate the evidence, and assuming he failed to do so, any error was rendered harmless by the BIA's de novo review and decision, which explicitly considered the evidence in the aggregate. Nor can we disagree with the BIA's conclusion that the evidence presented by Singh does not establish, even in the aggregate, that "extreme hardship" would result if he were removed. *See Matter of Chumpitazi*, 16 I. & N. Dec. 629, 635 (BIA 1978) (explaining that "[extreme] hardship . . . encompasses more than the mere economic deprivation that might result from an alien's deportation from the United States . . . . [T]he readjustment of an alien to life in his native country after having spent a number of years in the United States is not the type of hardship that we have characterized as extreme . . . .").

We therefore conclude that even if the IJ erred in evaluating the evidence concerning hardship, his errors were rendered harmless by the BIA's de novo review, and the BIA did not err.

## IV.   CONCLUSION

**[14]** For the reasons given, we hold that we have jurisdiction to review determinations of extreme hardship under INA § 216(c)(4)(A). Because the BIA did not err in holding that Balbir Singh's removal would not result in extreme hardship, we deny the petition for review.

**PETITION FOR REVIEW DENIED.**